UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| MELANIE J. WAYT and | ) | |
| WALTER G. WAYT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 4:10-cv-00081-SEB-WGH |
| | ) | |
| TOWN OF CROTHERSVILLE, | ) | |
| CROTHERSVILLE UTILITIES, | ) | |
| CROTHERSVILLE WATER DEPT., | ) | |
| AMOS PLASTER, and | ) | |
| ALISA SWEAZY, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

### Introduction

This matter is before the Court on Defendants' Motion for Summary Judgment

[Docket Nos. 32-34] and on Plaintiffs' Motion for Partial Summary Judgment [Docket

Nos. 46-48].

### Factual Background

The facts viewed in the light most favorable to the non-moving party are as

follows.

**1.  The Crothersville Water Utility**

Defendant Town of Crothersville ("Crothersville") established a water utility in

1982 to service the inhabitants of their town.  Affidavit of Alisa Sweazy in Response to

Motion to Certify ("Sweazy Class Cert. Aff.") ¶ 2).  That same year, Crothersville

enacted an ordinance exempting its water utility from regulation by the Indiana Public

Service Commission.  CROTHERSVILLE, IND. ORDINANCES ("Crothersville Ordinances") §

52.01 (2002).  Operations at the water utility are governed by Chapter 52 of the

Crothersville Ordinances.  *Id.* §§ 52.01 *et seq.*

Section 52.02(C) provides:

(C)  *Collection and deferred payment charges.*  All bills for water service
not paid within 15 days from the due date hereof as stated in such bills shall
be subject to the collection or deferred payment charge of 10% of that part
of the delinquent account which does not exceed $3 plus 3% of any
delinquent amount in excess of $3.

*Id.* § 52.02(C).

Section 52.02(F) provides the process for reconnection as follows:

(F)  *Involuntary reconnection fee.*  If a customer has his service
discontinued for nonpayment of bills, the member must pay all bills due and
payable plus the minimum monthly rate multiplied by the number of
months the service has been disconnected plus a reconnection fee of $25, or
the regular connection fee, whichever is lesser, before reconnection will be
made for the customer.

*Id.* § 52.02(F).  Since the time of the original enactment of Section 52.02(F), the

reconnection fee has been increased to $50.00.  Sweazy Class Cert. Aff. ¶ 7.

Though Chapter 52 of the Crothersville Ordinances governs Crothersville's water

utility, the town, logically assuming that most citizens would not maintain a working

familiarity with its enactments, published its policy regarding nonpayment of water and

other utility bills in the "Crothersville Utilities" pamphlet, which states in relevant part:

Bills are due the 15th of each month.  If your bill is delinquent, (after the
15th) a late charge is added to the bill.  The bill must be paid in full, before
noon, on the shut off date (listed on the delinquent card).  If your water is

shut off for nonpayment, a $50 reconnect fee will be charged.  If you move, please notify the utility office as soon as possible so the utilities can be taken out of your name.  Your customer deposit will be applied to your final bill and the balance refunded to you.

Affidavit of Alisa Sweazy ("Sweazy Aff.") at Ex. 2.  This pamphlet is distributed to all new Crothersville Utilities customers along with the telephone number for the utilities office listed at the top of the front page of the document.  *Id.*; Sweazy Class Cert. Aff. ¶ 8.

**2.  Plaintiffs' Purchase of 412 West Howard**

In 2004, Plaintiffs Melanie Wayt and Walter Wayt entered into a real estate contract for the purchase of a residence located at 412 West Howard Street, Crothersville, Indiana ("412 West Howard").  Compl. ¶ 6.  The seller of the property was Defendant Amos Plaster ("Plaster").  *Id.*  The sales contract required Plaintiffs to pay for all utilities located at 412 West Howard.  *Id.* ¶ 7.  Thereafter, Melanie Wayt established an account in her name only with Crothersville Utilities for them to supply their water.  *Id.*; Sweazy Aff. ¶ 2.[1]

**3.  Plaintiffs' Prior Dealings with Crothersville Utilities**

Melanie Wayt received uninterrupted water service pursuant to her contract with Crothersville until late October 2008, when she failed to pay her October 1, 2008 bill.  Deposition of Melanie Wayt ("Melanie Wayt Dep.") at 64.  As a result of her nonpayment, Crothersville disconnected the water supply to 412 West Howard on October 30, 2008.  Compl. ¶ 9.  Soon thereafter, Melanie Wayt applied for reconnection

---

[1]August 23, 2008 was the date of the last payment made by Plaintiffs to Plaster under the purchase agreement relating to the 412 West Howard property.  *See* Compl. ¶ 21; Deposition of Amos Plaster ("Plaster Dep.") at 13.

and paid all the required fees associated with reestablishing service, and Crothersville reinstated her water service. *Id.* ¶ 10. Plaintiffs never disputed the October 2008 bill.[2] Melanie Wayt Dep. at 65; Deposition of Walter Wayt ("Walter Wayt Dep.") at 15. Water service to 412 West Howard continued on uninterrupted until 2010. Compl. ¶ 13.

**4. The Process of Terminating Water Service by Crothersville**

Defendant Alisa Sweazy ("Sweazy") is the deputy clerk for Crothersville, a position she has held for fourteen years. Deposition of Alisa Sweazy ("Sweazy Dep.") at 8. One of her duties is overseeing the billing and collection activities for the water utility accounts. *Id.* Sweazy estimated there are roughly 800 customers of Crothersville's water utility. *Id.* at 10. The process for billing begins at the end of each month when, on the last day of the month, a customer is mailed a bill for utility services including water. *Id.* The bill advises the customer, pursuant to the Crothersville Ordinances, that the customer has until the 15th of the month to pay the bill. *Id.* If the bill is not paid by the 15th, Crothersville sends out a "delinquent card" with a late penalty assessed. *Id.* at 11; Sweazy Aff. ¶ 14. To send out the "delinquent card," Sweazy reviews the billing software on the 16th of the month or the first working day after the 15th to determine which accounts are delinquent. Sweazy Dep. at 12-13. A termination date is then placed on the "delinquent card." *Id.* at 14. That termination date is calculated to fall on the

_____

[2]Walter Wayt agrees that neither he nor Melanie Wayt has ever disputed a water bill from Crothersville. Walter Wayt Dep. at 14-15.

Monday, Tuesday, or Thursday immediately prior to the final day of the month.[3]  *Id.*  If the account has not been paid by noon on the termination date, Sweazy notifies the appropriate water utility employees of the delinquency to turn off the water service for the delinquent account.  *Id.* at 17, 21.

Sweazy estimates that she will prepare approximately 200 delinquency notices in a given month, and there are approximately twelve to seventeen disconnections made in a given month.[4]  Sweazy Dep. at 16.  If a customer's water service is disconnected, the outstanding balance as well as the reconnection fee must be paid to have service restored.  Upon receipt of payment, Sweazy will contact the water company employee to turn the water back on at the customer's location.  *Id.* at 23.  Based on a review of Crothersville Utilities records between July 2008 amd August 2010, Sweazy reported that Crothersville has disconnected 243 accounts.  Sweazy Class Cert. Aff. ¶¶ 11-12.[5]  During that same period of time, Crothersville had reconnected a total of 213 accounts out of the 243 disconnects.  *Id.* ¶ 14.  Sweazy recalls none of those 213 reconnects ever disputing or complaining about the amounts of their bills.  *Id.* ¶¶ 15-16.  The remaining thirty customers whose service was disconnected either moved away or did not seek to have

---

[3]Sweazy bills for the ensuing months on the final days of the current months, so no terminations are scheduled to occur on that day.  Additionally, Crothersville has a policy of not conducting terminations on a Friday or Wednesday.  Sweazy Dep. at 14.

[4]Sweazy indicated that these services were disconnected based on the customers' failures to pay for service that had already been provided to them.  Sweazy Class Cert. Aff. ¶ 10.

[5]According to Sweazy, some customers have been disconnected more than once, so there were fewer than 243 separate customers whose service was disconnected.  Sweazy Class Cert. Aff. ¶ 13.

service reinstated, and, therefore, they also did not dispute the amounts they were billed. *Id.* ¶ 17.

**5. Plaintiffs' March 2010 Disconnection**

In January 2010, Plaintiffs decided to temporarily move their residence to South Bend, Indiana, but Melanie Wayt intended to keep water service in effect at the 412 West Howard address. Melanie Wayt Dep. at 10, 17. Plaintiffs moved their household effects, including a bed, washer and dryer, refrigerator, and television, to the South Bend residence. *Id.* at 26. Their other belongings were stored at a friend's home in Crothersville. *Id.* The house in South Bend was a rental. Plaintiffs both became employed there. *Id.* at 10-12. They did not have their mail forwarded from 412 West Howard to their new address in South Bend. *Id.* at 26. Melanie Wayt also did not inform Crothersville Utilities of her move, though she had the Crothersville Utilities telephone number available to her the entire time. *Id.* at 17, 86. Meanwhile, Plaintiffs continued to receive mail at the 412 West Howard address. *Id.* at 26. Melanie Wayt testified that her father, who lived in Seymour, Indiana, picked up their mail at 412 West Howard on a weekly basis. *Id.* at. 39-40.

Plaintiffs periodically returned to Crothersville and picked up their mail from Melanie Wayt's father. Melanie Wayt Dep. at 17. Plaintiffs picked up the January 2010 water bill for 412 West Howard and paid it on February 1, 2010. *Id.* at 20. In February, Plaintiffs again picked up their water bill and paid it on February 19. *Id.* at 19.

In early March 2010, Melanie Wayt's water bill was mailed to 412 West Howard. Sweazy Aff. ¶ 12.  Plaintiffs visited Crothersville on approximately March 13 or 14. Melanie Wayt Dep. at 38.  Melanie Wayt retrieved mail from her father, but she did not find her water bill among the other matters.  *Id.*  Plaintiffs assert that Melanie Wayt's father was "unable to apprise her of the bill."[6]  Compl. ¶ 12.

"Immediately subsequent to" March 15, 2010, a "delinquent card" was mailed to 412 West Howard relating to Melanie Wayt's March 2010 bill.[7]  Sweazy Aff. ¶14.  The "delinquent card" notified the recipient of a disconnection date of March 30, 2010.  *Id.* The format of the "delinquent card" that Crothersville Utilities sends to its customers includes the title "Delinquent Notice" and states:  "Dear Customer:  According to our records, your utility bill is delinquent in the amount as shown above.  If payment is not received by noon [on the disconnect date], service will be disconnected and a reconnection fee of $50.00 will be charged."  Sweazy Dep. at Ex. B.  The "delinquent card" includes a telephone number for Crothersville Utilities at the top of the card.  *Id.* Other than paying the full balance of the amount billed, no other method exists for avoiding a disconnection, except for the option that a customer may appear before the

---

[6]Melanie Wayt indicated that this was not the only time she had failed to receive a bill; water bills for June and July 2011 also failed to arrive at the 412 West Howard address.  Declaration of Melanie Wayt ¶ 3.

[7]The United States Postal Service never returned Melanie Wayt's March 2010 bill or the delinquent card as undeliverable.  Sweazy Aff. ¶ 15.

Crothersville Town Council ("Town Council").[8]  *Id.* at 80-82.  Sweazy "can't make that judgment."  *Id.* at 81.  Defendants admit that neither the Crothersville Utilities pamphlet nor the Crothersville Ordinances provide customers a right to a pre-disconnection hearing.  Sweazy Class Cert. Aff. ¶ 9.

Plaintiffs returned again to Crothersville on March 28, 2010.  Melanie Wayt Dep. at 35.  As was her custom, Melanie Wayt picked up the mail that her father had collected, and she also traveled to 412 West Howard to check the mail.  *Id.*  She did not check specifically for a water bill, but did not find one, which was not a concern for her at that time.  *Id.* at 38-40.  She also averred that she did not find a "delinquent card" among her mail on March 28.  *Id.* at 40.  Melanie Wayt did not pay the March 2010 bill because she did not get the bill; in addition, her father was dying, and she was distracted by her distress.  *Id.* at 73.

On March 30, 2010, Crothersville Utilities disconnected the water service at 412 West Howard.  Compl. ¶ 13.  Melanie Wayt has never disputed either that she owed the

_____

[8]There have been a few circumstances when Crothersville Utilities addressed customers' complaints with disputed bills, primarily in circumstances pertaining to water leaks.  Sweazy is aware of situations when Crothersville Utilities customers requested relief from a bill to avoid disconnection because of a leak that occurred, causing the customer's bill to be higher than expected.  Sweazy Dep. at 81.  In such circumstances, the customer calls and asks to be placed on the agenda for the next Town Council meeting to be heard regarding his or her bill.  *Id.* at 83.  After hearing the concern or complaint, the Town Council determines how to handle the situation, including granting extensions of time for the customer to make payment or other adjustments to the bill.  *Id.* at 80-84.  Appearing before the Town Council to dispute a bill is the only way a customer can maintain his or her water service if he or she has not paid the bill.  *Id.* at 84.

March 2010 bill or its amount.[9]  Melanie Wayt Dep. at 73.  She was aware prior to January 2010 of Crothersville Utilities's disconnection policy relating to a customer's failure to pay his or her bill.  *Id.* at 70.  Melanie Wayt understood that under Crothersville Utilities's policy, failure to pay a bill by March 15 would result in a penalty; failure to pay the bill by the shut-off date would result in disconnection; and any subsequent reconnection would be conditioned on payment of a $50 reconnection fee.  *Id.* at 70-71.

Due to the death of Melanie Wayt's father, Plaintiffs returned to Crothersville on April 5, staying through April 10, 2010.  Melanie Wayt Dep. at 27.  Plaintiffs spent their nights at Melanie Wayt's father's residence.  *Id.*  However, Plaintiffs also spent several hours each day at their 412 West Howard residence, despite not having water service.  *Id.* Melanie Wayt testified that she knew the water was off, but due to the death of her father, she did not have time to think about reinstating her water connection.  *Id.* at 28.

**6. Plaintiffs' Attempt to Reconnect Water Service**

On April 16, 2010, Melanie Wayt contacted Sweazy regarding the water connection for 412 West Howard.  Melanie Wayt Dep. at 28.  Sweazy informed Melanie Wayt that her connection could not be reinstated because the account had been taken out of Melanie Wayt's name and placed in Plaster's name.[10]  *Id.* at 29.

---

[9]Despite the fact that Plaster apparently eventually paid the bill, Melanie Wayt believes that she still owes Crothersville for her March 2010 bill.  Melanie Wayt Dep. at 72.

[10]Sweazy told Melanie Wayt that Crothersville Utilities had received a returned piece of mail with no forwarding address for Plaintiffs, so they sent the piece of mail to Plaster.  Melanie Wayt Dep. at 30.

On July 2, 2010, Plaintiffs moved back to Crothersville from South Bend and resumed residency 412 West Howard.  Melanie Wayt Dep. at 28.  On July 6, 2010, Plaintiffs went to talk to Sweazy in person at her office.  *Id.* at 45.  Melanie Wayt sought to have her water service turned back on, but Sweazy informed her that the water connection could not be reinstated without the authorization of Plaster or his attorney.  *Id.*  Sweazy further informed Melanie Wayt that the water connection issue had become the subject of a civil lawsuit.  *Id.* at 46.

On July 8, 2010, Crothersville Utilities workers removed the water meter at 412 West Howard upon learning that an unknown, unauthorized individual had manually turned the water service on.  Melanie Wayt Dep. at 47; Sweazy Aff. ¶ 18.  Melanie Wayt called the utilities office and spoke with Sweazy's supervisor, Nalona Bush ("Bush"), who is the Town of Crothersville's Clerk.  *Id.* at 44, 47.  Bush had no explanation for the removal of the water meter and she Melanie Wayt to speak with Sweazy about the issue. *Id.* at 47.  Melanie Wayt then contacted the local Legal Aid office.  *Id.*  Later that day, Melanie Wayt visited the Crothersville Utilities office to obtain a written explanation for the removal of the meter at 412 West Howard.  *Id.* at 47-48.  Sweazy refused to provide a written explanation to Melanie Wayt.  *Id.* at 48.

On July 12, 2010, Plaintiffs attended a Town Council meeting.  Melanie Wayt Dep. at 61.  The Town Council members agreed to hear Plaintiffs' complaint.  *Id.* at 61-62.  However, the Crothersville town attorney ultimately advised Plaintiffs that because

an attorney from the Legal Aid office had contacted him, Plaintiffs could not be heard because Plaintiffs now were represented by an attorney. *Id.* at 62.

### 7. Plaintiffs' Class Action Lawsuit

On July 26, 2010, Plaintiffs filed the instant lawsuit, framing it as a class action brought on behalf of all Crothersville Utilities customers who, during the two years prior to the filing of this lawsuit, had had their water service disconnected without an opportunity to be heard before their service was disconnected. *See generally* Compl. They named as Defendants the Town of Crothersville, Crothersville Utilities, and Crothersville Water Department (collectively, the "Crothersville Defendants"), Plaster, and Sweazy. *Id.* Sweazy has been sued in her official capacity and in her individual capacity to the extent that her conduct failed to conform to the policies of Crothersville Utilities. *Id.* ¶¶ 23-24. Plaintiffs' claim in Count I is against the Crothersville Defendants, alleging that they have violated the Due Process Clause of the Fourteenth Amendment by failing to provide Melanie Wayt and all other water customers with an opportunity to be heard prior to having their water service terminated. *Id.* ¶¶ 38-41. In Count II, Plaintiffs raise a due process claim against Sweazy individually for causing the termination of Plaintiffs' water service without giving Plaintiffs an opportunity to be heard. *Id.* ¶¶ 42-45. Plaintiffs claim in Count III that all of the Defendants acted jointly to deprive Plaintiffs of their due process and equal protection rights under the Fourteenth Amendment in refusing to allow her to reconnect her water service with Crothersville. *Id.* ¶¶ 46-49. Finally, in Count IV, Plaintiffs allege that all Defendants jointly interfered with

Plaintiffs' use, possession, and enjoyment of their property when they deprived Plaintiffs of their water service at 412 West Howard.  *Id.* ¶¶ 50-53.

### 8.  The Pending Motions for Summary Judgment

The Crothersville Defendants and Sweazy have filed a Motion for Summary Judgment contending that:  (1) Melanie Wayt possessed no procedural due process rights because only individuals with bona fide disputes about their utility bills are protected under that provision of the Constitution; (2) Melanie Wayt had no procedural due process rights because she had no protectable property interest in continued water service; (3) no implied contract had been created between Melanie Wayt and Crothersville establishing a property interest in continued water service; (4) Sweazy's actions in all respects conformed to and were taken consistent with Crothersville Utilities's policies, thus entitling her to qualified immunity; (5) Plaintiff Walter Wayt lacks standing to pursue this claim because he was not a utility customer; and (6) Plaintiffs' state law claims against the Crothersville Defendants and Sweazy in Count IV are barred because Plaintiffs failed to provide the required notice and exhaustion of remedies under the Indiana Tort Claims Act.[11]

_____

[11]In Plaintiffs' Memorandum in Opposition to Town of Crothersville's Motion for Summary Judgment and Plaintiffs' Memorandum in Support of Partial Motion for Summary Judgment, they concede that all claims against Defendant Sweazy in her individual capacity must be dismissed and that Count IV must be dismissed as to all Defendants except Plaster because Plaintiffs failed to provide proper notice under the Indiana Tort Claims Act.  Consequently, the remaining claims are: Count I (alleging a due process violation for termination of water service without the opportunity to be heard); Count III (alleging that the failure to reconnect Plaintiffs' water service violated Plaintiffs' constitutional rights to due process and equal protection); and Count IV (alleging interference with use and possession of Plaintiffs' property against Defendant Plaster only).

Plaintiffs have also moved for summary judgment.  In their Memorandum in Support of Motion for Partial Summary Judgment, Plaintiffs assert that: (1) Melanie Wayt had a property interest in continued water service; (2) Defendants' actions violated the Plaintiffs' Fourteenth Amendment rights  by terminating Melanie Wayt's water service without affording her due process; (3) the Crothersville Defendants' refusal to reconnect Plaintiffs' water service violated the Equal Protection Clause of the Fourteenth Amendment; and (4) Plaintiffs are entitled to judgment as a matter of law against Defendant Plaster because the undisputed facts reveal that he interfered with their use and possession of the 412 West Howard dwelling.

Having considered the parties' briefs and the relevant legal authorities, and being duly advised, the Court now rules as follows:

## **Legal Analysis**

### I.      **Standard of Review**

In considering a motion for summary judgment, all facts and reasonable inferences must be construed in favor of the non-moving party.  *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005).  We do not evaluate the weight of the evidence, determine the credibility of witnesses or the ultimate truth of the matter; rather, we must decide whether there exists a genuine issue of triable fact.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 245-50 (1986).  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." *Magin*, 420 F.3d at 686 (citing Fed. R. Civ. P. 56(c));

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 323. To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Anderson*, 477 U.S. at 251-52. The nonmoving party must show that there is evidence upon which a jury reasonably could find for the plaintiff. *Id.* If it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish its case, summary judgment is not only appropriate, but also required. *See Celotex*, 477 U.S. at 322.

## II.   Discussion

### A.  Melanie Wayt's Fourteenth Amendment Claim of Denial of Due Process

The parties have filed dueling motions for summary judgment on Melanie Wayt's due process claim. Defendants argue that Melanie Wayt had no protected property interest in continued water service; Plaintiffs rejoin that she did have a protected property interest in continued water service under the Due Process Clause and that the Crothersville Defendants' failure to provide her a hearing before her water was disconnected from her home was unconstitutional.

-14-

The Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. In order for Melanie Wayt's claim to come within the protections of the Fourteenth Amendment's Due Process Clause, Plaintiffs must first demonstrate their "legitimate claim of entitlement" to a "property" interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "Property interests, of course, are not created by the Constitution. Rather[,] they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Property rights arise from an independent source, such as a state statute, regulation, municipal ordinance, or an express or implied contract. *Covell v. Menkis*, 595 F.3d 673, 675 (7th Cir. 2010). State law can create a constitutionally protected property interest by establishing statutory or regulatory measures that impose substantive limitations on the exercise of official discretion. *See Hewitt v. Helms*, 459 U.S. 460, 470-71 (1983).

The Seventh Circuit has never directly addressed whether the customers of a public utility such as the water company have a property interest in continued service such that it may not be extinguished without due process. The Seventh Circuit has, however, in the past "assume[d]" that a customer "has a protected property interest in sanitation services and a supply of potable water." *Kurr v. Vill. of Buffalo Grove*, No. 89-2321, 1990 WL 125906, at *5 (7th Cir. 1990) (citing *Memphis Light, Gas & Water Div. v.*

-15-

*Craft*, 436 U.S. 1, 11 (1978)).  Additionally, two other circuits have addressed whether the customer of a utility has a protected property interest in continued service and concluded that they do.  *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1474 (6th Cir. 1993) ("It is well settled that the expectation of utility services rises to the level of a 'legitimate claim of entitlement' encompassed in the category of property interests protected by the due process clause."); *see also Ransom v. Marrazzo*, 848 F.2d 398, 409 (3d Cir. 1988).

However, in *Memphis Light, Gas & Water Division v. Craft*, the Supreme Court ruled that customers of a utility must first establish an entitlement to the continued utility service arising either from an independent source of state or local law, or by contract. The Supreme Court held that the Due Process Clause applied to terminations of the Crafts' utility services because Tennessee common law prohibited public utilities from terminating utility service "at will," requiring instead "just cause" for the termination of utility services.  *Craft*, 436 U.S. at 11.

In the case before us, our search of Indiana law reveals no comparable instance under which this state, either by statute or at common law, has explicitly created a protectable right on the part of *all* her citizens to uninterrupted or discontinued water service that cannot be extinguished "at will" or without "just cause."[12]  While Indiana

_____

[12]In the Tennessee case before the Supreme Court [*Craft*], Tennessee law had established a property right in continued utility service required utility service "to all of the inhabitants of the city of its location alike without disccrimination, and without denial, except for good and sufficient cause."   *Craft*, 436 U.S. at 11(quoting *Farmer v. Nashville*, 156 S.W. 189, 190 (Tenn. 1913)). Indiana law provides that "[t]he primary duty of a public utility is to serve on reasonable terms all

(continued...)

-16-

statutory and regulatory laws arguably create a protectable property interest in the continued receipt of water for *some* Indiana water customers, *see* 170 Ind. Admin. Code 6-1-16 (providing conditions for the termination of water service), these authorities do not govern the actions of the Crothersville Defendants in disconnecting Plaintiffs' water service because Crothersville Utilities is a "municipally owned utility" which falls outside the definition of "public utility." *See* Ind. Code § 8-1-2-1; 170 Ind. Admin. Code 6-1-1. As such, it is exempt from the rules and regulations created and enforced by the Indiana Utility Regulatory Commission and is free to create its own rules for the delivery of water service. 170 Ind. Admin. Code 6-1-2.

There being no state law source of such a property interest, we look next to the Crothersville Ordinances to determine whether they create a protectable property interest in continued water service. Plaintiffs argue that they do, citing Sections 52.02(F) and 52.03(B)(1) of those ordinances. Plaintiffs contend that, pursuant to Section 52.02(F), if a customer's service is disconnected, they are required to pay all bills due and owing, plus other penalties and a reconnection fee "before reconnection will be made for the customer." Crothersville Ordinances § 52.02(F) (2002). Plaintiffs also note language in Section 52.03(B)(1) which obligates new customers to pay a deposit "as a condition of

---

[12](...continued)
those who desire the service it renders. This duty does not permit it to pick and choose and to serve only those portions of the territory which it finds most profitable, leaving the remainder to get along without the service which it alone is in a position to give." *Pub. Serv. Comm'n v. Panhandle E. Pipeline Co.*, 71 N.E.2d 117, 127 (Ind. 1947). We do not view this ruling to establish or to recognize a right under Indiana common law to be protected from termination of utility services only for "just cause," so that a property interest in continued water service exists thereby.

receiving water service from the utility." *Id.* § 52.03(B)(1).  According to Plaintiffs, these two sections of the Crothersville Ordinances place no conditions on the receipt of water services in Crothersville save for the payment of money, and, therefore, makes water service in Crothersville a protected property right similar to the right recognized in *Craft* that cannot be extinguished "at will."  Clearly, nothing in these or any other sections of the Crothersville Ordinances explicitly confers a right to water service upon the residents of Crothersville that can *only* be extinguished for "good cause."

Despite Plaintiffs' inability to establish the creation, either by statute, regulation, or ordinance, of a property right possessed by Crothersville Utilities customers in continued water service, Melanie Wayt could still be entitled to due process if she can show that such a right to water service was created by either an express or implied contract between her and the Crothersville Utilities.  Implied contracts can establish constitutionally protectable property rights.  *See, e.g.*, *Vail v. Bd. of Educ. of Paris Union Sch. Dist. No. 95*, 706 F.2d 1435, 1438 (7th Cir.1983).

Plaintiffs rely on the Seventh Circuit's decision in *Sterling v. Village of Maywood*, 579 F.2d 1350 (7th Cir. 1978), as support for the proposition that all customers of water services have a contractual right to continued services that cannot be extinguished without due process.  *Sterling* was a case involving a tenant who was denied water service in part because the landlord failed to pay the bill for prior services.  In finding that the *tenant* had no contractual right to continued water service, the Seventh Circuit explained:

> [P]laintiff had no contractual relationship with the Village Water
> Department.  The landlords of her building were the applicants for water

-18-

> service and they were the persons who sought termination of that service.
> Thus, the express contractual interest in water service was theirs
> exclusively. In addition, plaintiff makes no claim that a de facto
> understanding existed between her and the Village. Thus, there is no
> implied property right.

*Sterling*, 579 F.2d at 1354. Plaintiffs argue that the language "the express contractual

interest in water service was theirs exclusively" strongly suggests that all property

owners, including Melanie Wayt, who are provided water services by an Indiana public

utility would have a recognized, contractual, protected property right in continued service.

We view Plaintiffs' argument as problematic for two reasons. First, *Sterling* involves

Illinois law, and it therefore has no bearing on whether a property right is created by

contract under Indiana law. Second, in *Sterling*, the court was dealing with a specific

physical contract; the local ordinance required that each "householder, property owner, or

other person desiring water or sewer service" submit an application for such service. *Id.*

In the case before us, no evidence has been presented establishing the existence of any

express contractual agreements between Crothersville Utilities and its customers.

Although it is clear that no express contract existed, we find Plaintiffs had a protected

property interest in continued water service under an implied contract theory. An implied

contract is defined as follows:

> one not created or evidenced by the explicit agreement of the parties, but inferred
> by the law, as a matter of reason and justice from their acts or conduct, the
> circumstances surrounding the transaction making it a reasonable, or even a
> necessary, assumption that a contract existed between them by tacit understanding.

BLACK'S LAW DICTIONARY 292-93 (5th ed. 1979). In the absence of an express contract,

Indiana law does recognize implied contracts for services rendered when these elements

-19-

are satisfied.  *See, e.g.*, *Silverthorne v. King*, 385 N.E.2d 473, 476 (Ind. Ct. App. 1979).

"Quasi-contracts or contracts implied-in-law can be created by the courts where there is

no contract in a true sense[,] but where justice warrants recovery as though there had been

a promise."  *Bailey v. Manors Grp.*, 642 N.E.2d 249, 253 (Ind. Ct. App. 1995).

      Here, the evidence indicates that Melanie Wayt was an established customer with

respect to receiving water service from Crothersville Utilities.  When she failed to make

the required monthly payments for water she had already received, Crothersville Utilities

likely had an action against her to collect those deficiencies pursuant to an implied

contract theory.  As the Indiana Court of Appeals explained in *Silverthorne*, 385 N.E.2d

at 476, "[w]here one accepts valuable services from another, the law imposes a promise to

pay for them.  To warrant a finding of an implied contract[,] the elements of intention to

pay and the expectation of payment must be found to exist."

      A corollary to the utility's entitlement to payment is the right to continued service

if payment has been made.  Hence, when Melanie Wayt claims that she believed she was

in full compliance with her payment obligations, Crothersville Utilities is not entitled to

terminate her service "at will."  Melanie Wayt had created an account for water service;

she had been delinquent in payment for that service in the past; her service had been

disconnected; she applied for reconnection; and her service was immediately reinstated

upon receipt of all fees associated with reconnection.  Sweazy testified that Ms. Wayt's

experience was consistent with the Town's standard practice:  when a customer pays the

outstanding balance and the reconnection fee, Sweazy contacts the Crothersville Utilities

worker to turn the water back on at the customer's location.  Sweazy Dep. at 23.  The parties' rights arise from and are defined by their quasi-contractual relationship, and it is reasonable to conclude that a part of this agreement is that the water service is not terminable "at will," which, under the circumstances, would be unfair and unjust.  Consequently, this implied contract created a protected property interest in continued water service that entitled Melanie Wayt to due process.[13]

The Supreme Court, in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), handed down the now familiar standard for procedural due process:  "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to appraise interested parties of the pendency of the action and afford them an opportunity to present their objections."[14]  These dual rights to notice and an opportunity to be heard must be

---

[13]Defendants argue that even if utility customers do have a protected property interest in continued service, such a right only "vests" when a customer has a bona fide dispute over the bill. Defendants' only source for this proposition is *Hargis v. City of Cookville*, 92 F. App'x 190, 194 (6th Cir. 2004).  We have been unable to locate any controlling authority that indicates that only people with bona fide disputes with the government are entitled to notice and opportunity to be heard before a property right is taken away.  Defendants' argument is contrary to a traditional understanding of property rights and due process.  As discussed below, the right to notice and an opportunity to be heard does not simply protect an individual from mistaken deprivations; these rights protect an individual from unfair deprivations as well.  *Fuentes v. Shevin*, 407 U.S. 67, 80-81 (1972).  A property owner who cannot point to any bona fide dispute about the amount of the bill still can challenge the fairness of taking away  the property right.  Hence, Plaintiffs do not have to have a bona fide dispute about the amount of the bill in order to be entitled to due process.

[14]The parties do not agree about whether Melanie Wayt actually received the "delinquent card" that Crothersville Utilities customarily mails to all customers.  However, "notice need not actually reach its intended target so long as it is reasonably calculated to do so."  *Gates v. City of Chi.*, 623 F.3d 389, 402 (7th Cir. 2010).  In this case, Sweazy indicated that a "delinquent card" was mailed to 412 West Howard for Melanie Wayt's March 2010 bill.  Sweazy Aff. ¶14.  Because Plaintiffs
(continued...)

granted at a meaningful time and in a meaningful manner. *Fuentes*, 407 U.S. at 80. In

*Fuentes*, the Supreme Court explained why an opportunity to be heard is so important:

> The constitutional right to be heard is a basic aspect of the duty of
> government to follow a fair process of decisionmaking when it acts to
> deprive a person of his possessions. The purpose of this requirement is not
> only to ensure abstract fair play to the individual. Its purpose, more
> particularly, is to protect his use and possession of property from arbitrary
> encroachment—to minimize substantively unfair or mistaken deprivations
> of property . . . . The requirement of notice and an opportunity to be heard
> raises no impenetrable barrier to the taking of a person's possessions. But
> the fair process of decision making that it guarantees works, by itself, to
> protect against arbitrary deprivation of property. For when a person has an
> opportunity to speak up in his own defense, and when the State must listen
> to what he has to say, substantively unfair and simply mistaken deprivations
> of property interests can be prevented.

*Id.* at 80-81. Consequently, for the right to notice and an opportunity to be heard to be

effective, "it must be granted at a time when the deprivation can still be prevented." *Id.* at

81.

In *Craft*, *supra*, following the determination that the utility customer was entitled

to due process based on the protectable property interest, the Supreme Court addressed

the issue of "whether due process requires that a municipal utility notify the customer of

the availability of an avenue of redress within the organization should he wish to contest a

particular charge." *Craft*, 436 U.S. at 13. The Court determined that a disconnection

notice that only warns of disconnection, but provides no information about an opportunity

to be heard, is inadequate. The Court explained that "[n]otice in a case of this kind does

---

[14](...continued)

have not provided any evidence to contradict Sweazy's affidavit, it appears that the notice was sent
in a manner reasonably calculated to reach Melanie Wayt; whether or not she actually received it
is immaterial.

not comport with constitutional requirements when it does not advise the customer of the availability of a procedure for protesting a proposed termination of utility service as unjustified." *Id.* at 14-15.

In our case, the "delinquent card" that was sent to Melanie Wayt only included a telephone number without providing any information as to any procedures, whether formal or informal, for customers to follow if they wished to protest a proposed termination of utility services. Under the clear weight of precedent, such a bare bones notice is constitutionally inadequate.

Even if the notice provided by the Crothersville Defendants had been adequate, there remains a question concerning whether their informal policy of allowing customers to call and speak with Ms. Sweazy, and perhaps eventually be placed on the agenda for the Town Council meeting, would suffice as an adequate opportunity to be heard. Due process "is flexible and calls for such procedural protections as the particular situation demands." *Hudson v. City of Chi.*, 374 F.3d 554, 559 (7th Cir. 2004). In determining how much process is required in a given situation, courts are to examine three factors:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). While no court within this circuit has been asked to delineate what is required in terms of an opportunity to be heard before a customer's utility services are terminated, we note that at least one other district court has

-23-

waded into these uncharted waters and concluded that the opportunity to be heard must be something more than simply an informal process.  *See, e.g.*, *Freeman v. Hayek*, 635 F. Supp. 178, 183 (D. Minn. 1986) ("The informal and unwritten method of appealing up the chain of command from the clerk to the city council would not meet the requirements set by the Supreme Court.").

Based on our understanding of the applicable principles, we believe that Melanie Wayt, as a customer of Crothersville Utilities, was entitled to an opportunity to interpose a formal request to be heard before her water service was actually disconnected.  In applying the three-part *Mathews* test, it is evident that a customer is entitled to more than the opportunity to place a phone call to a Crothersville Utilities employee who then, at her discretion, decides whether to allow that customer to be placed on the agenda of the upcoming Town Council meeting, where the Town Council's attorney decides whether or not to hear the customer's complaint.  Customers have a strong and obvious interest in maintaining water service at their homes, which fact weighs decidedly in Melanie Wayt's favor.  A customer's right to be heard in a meaningful way prior to a decision that will affect his interests in important and substantial ways, whether or not the customer's position is well taken on the merits, is consistent with his or her constitutional entitlements.  Given the potential impact of unfounded decisions resulting from a disconnection of service when no opportunity exists to be heard by the final decisionmaker who is vested with discretion whether to disconnect service, due process requires reasonable protections to be provided.

-24-

In summary, under the facts of this case, we conclude that although a municipal utility is not expressly governed by state statute, by creating an account with Melanie Wayt, Crothersville Utilities had entered into an implied contract with her entitling her to water service in exchange for her payment of the assessed fees and costs. Plaintiff Melanie Wayt, therefore, acquired a protected property interest in continued water service under the Due Process Clause of the Fourteenth Amendment such that her service cannot be terminated without giving her both notice of the impending cutoff in service and an *opportunity*[15] to be heard. The "delinquent card" issued by the Crothersville Defendants fails to provide adequate notice because it lacks information for the customers regarding a method or process to dispute the pending termination. In addition, the informal, ad hoc, unpredictable process utilized by the Crothersville Defendants to provide their customer, Melaine Wayt, with a meaningful opportunity to be heard falls far short of due process standards. Defendants' Motion for Summary Judgment seeking dismissal of Count I of Plaintiffs' Complaint, therefore, must be DENIED and Plaintiffs' Motion for Partial Summary Judgment GRANTED.[16]

---

[15]In reading the Crothersville Defendants' briefing, it appears that there could be some confusion about what due process entails before a property right is taken away. The Crothersville Defendants do not have to conduct a hearing every time that they are poised to disconnect service in order for a disconnection to be lawful. So long as a customer who requests an opportunity to be heard is afforded such an opportunity, the Crothersville Defendants would have fulfilled their obligation under the Due Process Clause.

[16]Plaintiffs moved for class certification only on Count I. Having now found the Fourteenth Amendment due process claim viable, we will address the class certification issue in due course.

### B.  Plaintiffs' Fourteenth Amendment Equal Protection Claim

Plaintiffs, in their Motion for Partial Summary Judgment, have also moved for judgment as a matter of law on Count III of their Complaint, wherein they allege an equal protection violation.  Under the Equal Protection Clause of the Fourteenth Amendment, no state may "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1.  The Equal Protection Clause provides protections from intentional and arbitrary discrimination, either by law or by improper execution of the law through duly constituted agents.  *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441, 445 (1923).

Equal protection claims fall into two analytical categories.  First, for claims involving individuals who come within a suspect class or involving a fundamental right, courts must apply strict scrutiny.  *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 319 (1976).  For all other equal protection claims not involving a suspect class or a fundamental right, the governmental decision will be upheld "so long as it bears a rational relation to some legitimate end."  *Romer v. Evans*, 517 U.S. 620, 631 (1996).  This latter approach is referred to as the rational basis test.  Individuals who allege a "class of one" equal protection claim fall into this second category, as the Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

-26-

Plaintiffs' claim in the case before us does not warrant strict scrutiny, as Plaintiffs do not claim that they are members of a suspect class, and, as the Seventh Circuit has held, the right to continued municipal water service is not a fundamental right. *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 567 (7th Cir. 1991). Because no fundamental right has been asserted, according to Seventh Circuit guidance, "all that is required is that there be a reasonable relationship between the continued water service and the conditions imposed by the City. We will strike down the conduct in question only if it is arbitrary and unreasonable bearing no substantial relationship to the public health, safety or welfare." *Id.* (internal citations omitted).

Plaintiffs allege in their Motion for Partial Summary Judgment that in applying the rational basis test, the decision not to reconnect Plaintiffs' service (starting on April 16, 2010, when Plaintiffs contacted Sweazy and she indicated that they would not be entitled to reconnect because the account had been placed in Plaster's name) was an arbitrary decision for which no rational basis existed. Plaintiffs cite *Sterling*, 579 F.2d at 1355, in support of their argument. In *Sterling*, the Seventh Circuit ruled that an equal protection claim could proceed where a utility had refused to permit a tenant to connect water service when the landlord owed for past service. The Seventh Circuit agreed that "a refusal to reinstate water service because the landlord has failed to pay the water bill is a violation of the tenant's right to equal protection." *Id.* The court reasoned that "a collection scheme that divorces itself entirely from the reality of legal accountability for

the debt involved[] is devoid of logical relation to the collection of unpaid water bills from the defaulting debtor." *Id.*

Plaintiffs contend that their situation is comparable to that in *Sterling* because Crothersville Utilities wrongfully classified its customers into two categories: those whose premises are titled in the name of another, and those who possess legal ownership in the premises themselves. Plaintiffs argue that this classification is like that in *Sterling*—"devoid of logical relation to the collection of unpaid water bills from the defaulting debtor."

While the Seventh Circuit recognizes that a utility customer is protected from arbitrary decisions to disconnect by governmental officials such as utility providers, the facts considered in a light most favorable to the Crothersville Defendants do not indicate that the decision not to reconnect Plaintiffs' water service was arbitrary as a matter of law. Plaintiffs' Motion for Partial Summary Judgment on Count III must be DENIED.[17] At trial, the Crothersville Defendants will be faced with Plaintiffs' claim that their decision to refuse reconnection to Plaintiffs was arbitrary and bore no "substantial relationship to the public health, safety or welfare."

---

[17]Plaintiffs have also agreed in their Response to Defendants' Motion for Summary Judgment that Count I does not apply to Plaintiff Walter Wayt because the account with Crothersville Utilities was not in his name. They bring his claim only under Count III and argue that it should not be dismissed even though he did not have an account for water service because the Equal Protection Clause of the Fourteenth Amendment applies equally to both Melanie Wayt and Walter Wayt to protect them from an arbitrary decision prohibiting their reconnection of water service. We agree that any arbitrary decision on the part of the Crothersville Defendants would be arbitrary with respect to both Melanie Wayt and Walter Wayt.

### C.  Plaintiffs' State Law Claim

Plaintiffs have also asserted a state law claim against all Defendants that they now concede applies only to Plaster, claiming that he wrongfully interfered with their use, enjoyment, and possession of their property.  Plaintiffs assert that Plaster admitted that he had instituted a foreclosure action against Plaintiffs because they had failed to make the required payments due him under a land purchase contract.  Plaster testified that the foreclosure action was "intended to get the Wayts out of the house."  Plaster Dep. at 6.  Plaster also admitted that the foreclosure action was his reason for instructing Crothersville Utilities not to reconnect water service for Plaintiffs.  *Id.* at 8.  Only after Plaster had consulted with his attorney did he direct Crothersville Utilities to reconnect Melanie Wayt's water service.  *Id.*

The Indiana Code explains that an individual is guilty of criminal trespass if he "knowingly or intentionally interferes with the possession or use of the property of another person without the person's consent . . . ."  Ind. Code § 35-43-2-2.  Furthermore, pursuant to section 34-24-3-1 of the Indiana Code, any individual who suffers a pecuniary loss as a result of a violation of Indiana Code section 35-43 may "bring a civil action against the person who caused the loss" for treble damages, attorneys' fees, and other costs.  Plaintiffs need not demonstrate a criminal conviction as a condition precedent to recovery under the civil liability portion of this statute.  *White v. Ind. Realty Assocs. II*, 555 N.E.2d 454, 456 (Ind. 1990) (interpreting statutory predecessor).  Plaintiffs must be

able to prove each element of the underlying crime by a preponderance of the evidence.
*Id.*

While it does appear that Indiana law allows the Wayt Plaintiffs to *maintain* this cause of action against Plaster, we lack sufficient facts to resolve this claim and to determine as a matter of law that Plaster's interference was wrongful.  We have not been provided a copy of the land purchase contract entered into between Plaster and the Plaintiffs.  Thus, we are unable to determine if Plaster's actions accorded with his rights under the land purchase contract.  We also lack any information regarding the specifics of the foreclosure proceedings which would allow us to know whether Plaster was entitled by court order to control the reconnection of water service to the 412 West Howard property.  Consequently, Plaintiffs' Motion for Partial Summary Judgment with respect to Count IV of their Complaint must be DENIED.

## Conclusion

For the reasons outlined above, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.  Defendants' Motion is DENIED with respect to Count I of Plaintiff's Complaint.  We hold that Plaintiff Melanie Wayt had a protected property interest in continued water service and that the Crothersville Defendants' actions ran afoul of the Due Process Clause of the Fourteenth Amendment because they did not afford Melanie Wayt adequate notice and an opportunity to be heard before disconnection of her water service.  Count II of Plaintiffs' Complaint is DISMISSED, as Plaintiffs have agreed not to pursue an action against Defendant Sweazy in her individual capacity.

-30-

Also, Defendants' Motion for Summary Judgment is GRANTED, and Count IV is

DISMISSED with respect to the Crothersville Defendants, but Count IV remains for

Defendant Plaster.

Plaintiffs' Motion for Partial Summary Judgment is GRANTED in part and

DENIED in part.  Plaintiff Melanie Wayt is entitled to judgment as a matter of law on

Count I of Plaintiffs' Complaint.  In all other respects, Plaintiffs' Motion for Partial

Summary Judgment is DENIED.

IT IS SO ORDERED.

Date: _____03/30/2012_____

_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Stephen R. Felson
stevef8953@aol.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP
jlowe@k-glaw.com

Ralph Edward Randall
HAYS & RANDALL
r.randall@c3bb.com

Steven C. Shane
shanelaw@fuse.net